CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 09 2011

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| BARRY LYNN VIA, | ) |
| Plaintiff, | ) Civil Action No. 7:11cv00050 |
| v. | ) MEMORANDUM OPINION |
| B.G. WILHELM, et al., | ) By: Samuel G. Wilson |
| | ) United States District Judge |
| Defendants. | ) |

This is an action pursuant to 28 U.S.C. § 1983 brought *pro se* by Virginia inmate Barry Lynn Via. Via alleges that the defendants, individuals at the Virginia Department of Corrections ("VDOC"), Red Onion State Prison ("ROSP"), and Augusta Correctional Center, violated his procedural due process rights when they falsely charged him with and punished him for the disciplinary offense of "inciting to riot or rioting." He further claims violations of the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc (2006) ("RLUIPA"), the First Amendment, and the Fourteenth Amendment by the defendants' failure to provide him with *halal* meat as part of his diet. Via seeks damages for the constitutional and statutory violations and an injunction ordering the defendants to provide *halal* meat as part of the Common Fare diet. The case is now before the court on the defendants' motion for summary judgment. Because Via's due process claim would, if established, necessarily imply the invalidity of his conviction for "inciting to riot or rioting," and because Via has not complied with the habeas exhaustion remedies imposed by Heck v. Humphrey, 512 U.S. 477 (1994), the court grants the defendants' motion for summary judgment on that claim. Further, because the defendants have established that VDOC's *halal* meat policy is the least restrictive means of furthering a compelling government interest, the court grants the defendants' motion for

summary judgment on Via's RLUIPA and First Amendment claims. Finally, because Via has not shown that he is being treated differently than similarly situated inmates or that any discrimination was purposeful, the court grants the defendants' motion for summary judgment on Via's Fourteenth Amendment claim.

## I.

Via's procedural due process claim names several defendants from Augusta Correctional (the site of the disturbance that ultimately gave rise to the claim), several defendants from ROSP (the site of the allegedly faulty proceeding), and a VDOC regional administrator. At this stage of the proceeding, the court views the facts in the light most favorable to Via. See, e.g., Scott v. Harris, 550 U.S. 372, 378 (2007). Via alleges that a group of inmates at Augusta Correctional began fighting in his vicinity on February 16, 2010. Via sat at a table some distance from the fighting as prison guards acted to bring the disturbance under control. While the guards worked to restore order, the situation moved into Via's immediate vicinity and an inmate punched him in the face. Correctional Officer Campbell saw the punch, asked Via if he was okay, and told Via that he would vouch that Via had not been involved in the fight. Via was then taken for medical treatment, placed on investigative status, transferred from Augusta Correctional to ROSP, and ultimately charged with "inciting to riot or rioting."[1]

According to Via, the subsequent investigation and conviction were replete with violations of procedural due process, including a lack of notice, a lack of representation in violation of prison policy, and a lack of specificity in the charges. (See Compl. cl. 1, 4–17, ECF no. 1.) Most importantly, Via claims that three prison officers gave knowing, false testimony at

---

[1] An affidavit from the hearing officer, filed by the defendants, states that surveillance footage confirmed Via's participation in the disturbance. The affidavit further states that Via did not comply with any orders given during the disturbance, that Via did not remove himself from the disturbance, and that all compliant inmates were standing and facing the wall during the disturbance.

his hearing, and that this false testimony was suborned by the investigating officer. (See Compl. cl. 1, 9–12.) Via alleges that, after the investigating officer found out about Officer Glover's, Campbell's, and White's written statements in support of Via, the investigating officer "had them change their statements orally." (Compl. cl. 1,12.) As a result, he claims, "Sgt. J.E. Glover, A.D. Campbell and J.D. White *all* gave false testimony that they *all* knew to be false." (Compl. cl. 1, 9.) The defendants maintain that Via received a fair and impartial disciplinary hearing and that sufficient evidence supported his conviction. Via's conviction resulted in his losing thirty days of regular cell-assignment and ninety days of good-time credit. Via is not requesting that the court restore his good-time credit, only that the he be awarded damages for the procedural due process violations.

In his *halal* meat claim, Via alleges a separate set of facts against a distinct set of defendants. He names the ROSP food-service manager, the ROSP assistant warden, the VDOC director, a VDOC regional administrator, and a VDOC dietitian. Via is a Muslim whose faith requires him to adhere to particular dietary restrictions. In an attempt to abide by these restrictions, he enrolled in the prison's Common Fare diet in 2008.[2] Prior to December 2, 2007, that diet supplied Common Fare participants with *halal* meat on Mondays, Wednesdays, and Fridays, but those servings have since been replaced with soy-protein-based entrees.[3] Via claims, however, that his Muslim faith and the Quran require him to eat *halal* meat each day. An affidavit from Mark Engelke, the Director of Food Services for VDOC, states that Engelke consulted with the leader of the Islamic Center of Virginia regarding Via's claim and learned that

---

[2] The Common Fare diet is designed to meet the nutritional and religious needs of a wide variety of religious groups, including Jews and Muslims. See Madison v. Virginia, 474 F.3d 118, 123 (4th Cir. 2006); Acoolla v. Angelone, No. 7:01-cv-01008, 2006 WL 938731, at *4 (W.D.Va. Sept. 1, 2006).

[3] On Tuesday, Thursday, Saturday, and Sunday, the prison serves tuna, hard-boiled eggs, or peanut butter. (Defs.' Br. Supp. Mot. Summ. J. Attach. 2, 3, ECF No. 25.)

there is no requirement for Muslims to eat meat every day and that the Common Fare diet does, in fact, meet Islamic guidelines. The affidavit further explains that VDOC spends $1.90 per day to feed an inmate, $2.85 per day for the Common Fare diet, and $5 to $7 per day when *halal* meat is included in the diet. (Defs.' Br. Supp. Mot. Summ. J. Attach. 2, ¶ 6, ECF No. 25.) Via seeks $1000 in compensatory and punitive damages and an injunction ordering *halal* meat to be included in his diet.

## II.

Via first claims that he is entitled to damages for the violation of his constitutional due process rights during his investigation and conviction for "inciting to riot or rioting." Because Via's claim would, if established, necessarily imply the invalidity of his conviction for "inciting to riot or rioting," and because Via has not complied with the habeas exhaustion requirements imposed by Heck v. Humphrey, his § 1983 claim is not viable and the court grants the defendants' motion for summary judgment.[4]

Wilkinson v. Dotson, 544 U.S. 74 (2005), is instructive in this case because it considers whether a prisoner's § 1983 claim is precluded by its intrusion upon the core of habeas corpus. Though distinguishable on the facts, the case is helpful because it traces the development of the pertinent jurisprudence beginning with the seminal decision of Preiser v. Rodriguez, 411 U.S. 475 (1973) and assists in framing the "core of habeas" issue here.

In Preiser, the Supreme Court initially considered the relationship between habeas corpus and § 1983. The state prisoners in Preiser brought § 1983 actions challenging the constitutionality of prison disciplinary proceedings resulting in the loss of their good-time credits. An analysis of the language, history, and purposes of habeas corpus and § 1983, "led the

---

[4] B.G. Wilhelm, J.E. Glover, J.D. White, A.D. Campbell, B. Cox, L. Mullins, Tracy Ray, and John S. Garman are the defendants named in this portion of Via's complaint.

4

Court to find an implicit exception from § 1983's otherwise broad scope for actions that lie 'within the core of habeas corpus.'" Wilkinson, 544 U.S. at 79 (quoting Preiser, 411 U.S. at 487). A state prisoner's challenge falls within that core, according to the Court, when he "challenges the fact or duration of his confinement . . . and seeks either immediate release from prison, or the shortening of his term of confinement." Id. (internal citations and quotations omitted). An action to restore good-time credits is in effect an attack on the duration of physical confinement, and thus "the Preiser prisoners could not pursue their claims under § 1983." Id.

As the Wilkinson Court noted, the Supreme Court's next pertinent decision, Wolff v. McDonnell, 418 U.S. 539 (1974), "elaborated the contours of this habeas corpus core." Id. (internal quotations omitted). In Wolff, as in Preiser, state prisoners challenged, under § 1983, the "revocation of good-time credits by means of constitutionally deficient disciplinary proceedings." Id. (citing Wolff, 418 U.S. at 553). The Wolff Court held that Preiser precluded "'an injunction restoring good time improperly taken.'" Id. (quoting Wolff, 418 U.S. at 555). But, as the Court recounted in Wilkinson, "the inmates *could* use § 1983 to obtain a declaration ('as a predicate to' their requested damages award) that the disciplinary procedures were invalid." Id. They could also seek an injunction against "*prospective* enforcement of invalid prison regulations. . . . In neither case would victory for the prisoners necessarily have meant immediate release or a shorter period of incarceration; the prisoners attacked only the wrong procedures, not . . . the wrong result." Id. at 80 (internal citations and quotations omitted).

Next, in Heck v. Humphrey, "the Court considered a different, but related, circumstance." Id. In Heck, a state prisoner sued state officials for damages under § 1983 claiming that they had caused his conviction by improperly investigating his crime and destroying evidence. Id. Citing "'the hoary principle that civil tort actions are not appropriate vehicles for challenging the

validity of outstanding criminal judgments,'" id. (quoting Heck, 512 U.S. at 486), the Court held "that where 'establishing the basis for the damages claim necessarily demonstrates the invalidity of the conviction,' . . . a § 1983 action will not lie 'unless . . . the conviction or sentence has already been invalidated.'" Id. (quoting Heck, 512 U.S. at 481–82, 87). Conversely, "where the § 1983 action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment . . . , the action should be allowed to proceed." Id. (internal quotations omitted).

Finally, "in Edwards v. Balisok, [520 U.S. 641 (1997)], the Court returned to the prison disciplinary procedure context of the kind it had addressed previously in Preiser and Wolff." Wilkinson, 544 U.S. at 80. In Edwards, the prisoner "sought 'a declaration that the procedures employed by state officials [to deprive him of good-time credits] violated due process, . . . damages for use of the unconstitutional procedures, [and] an injunction to prevent future violations.'" Id. (quoting Edwards, 520 U.S. at 643). The court applied Heck and concluded that "habeas was the sole vehicle for the inmate's constitutional challenge insofar as the prisoner sought declaratory relief and money damages," because the prisoner's principal claim that the decision maker was biased, if established, would "'necessarily imply the invalidity of the deprivation of [the prisoner's] good-time credits.'" Id. at 80–81 (quoting Edwards, 520 U.S. at 646). Indeed, "the *nature* of the challenge to the procedures could be such as necessarily to imply the invalidity of the judgment." Edwards, 520 U.S. at 645 (emphasis added).

According to the Court, Preiser, Wolff, Heck, and Edwards, taken together indicate that, absent prior invalidation, a state prisoner's § 1983 action is barred—no matter the relief sought (damages or equitable relief) and no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—if success in that action would necessarily demonstrate the invalidity of confinement or its duration. With the lessons of Preiser, Wolff,

6

Heck, and Edwards in mind, this court now turns to Via's claim seeking damages for the violation of his right to procedural due process.

In this case, a judgment in favor of Via would necessarily imply the invalidity of his conviction for "inciting to riot or rioting" and he may not proceed under § 1983 unless he can demonstrate that the conviction has previously been invalidated by successful appeal, executive expungement, or by habeas corpus proceeding. See Heck, 512 U.S. at 487. Via argues that he is not requesting restoration of his good-time credits (and thus an implied invalidation of his conviction), but is instead merely seeking damages for violations of procedural due process: "plaintiff has sought no relief as to his good time[,] he is seeking damages for the violation of his constitutional rights." (Reply to Mot. Summ. J. 4–5, ECF no. 36.)

It is indeed true that a state prisoner may recover at least nominal damages under § 1983 if he proves that the proceedings which deprived him of his good-time credits were violative of procedural due process *without* also proving that he was deprived of those credits undeservedly as a substantive matter. Edwards, 520 U.S. at 645. However, "the *nature* of the challenge to the procedures could be such as necessarily to imply the invalidity of the judgment." Id. at 645 (emphasis added). Here, Via alleges that after the investigating officer found out about three correctional officers' written statements in support of Via, the investigating officer "had them change their statements orally." As a result, Via claims, "Sgt. J.E. Glover, A.D. Campbell and J.D. White *all* gave false testimony that they *all* knew to be false." A plaintiff who alleges deceit and bias in a proceeding depriving him of good-time credits—as Via has here—is unable to proceed under § 1983 because those *particular* allegations are such that they would necessarily imply the invalidity of the judgment. See id. at 648 (holding that a prisoner's "claim for declaratory relief and money damages, based on allegations of deceit and bias on the part of the

7

decision maker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983). Via's allegations imply both bias and deceit on the part of those involved and would, if established, necessarily imply the invalidity of the deprivation of his good-time credits. Via's claim is therefore brought within the ambit of Heck and the "core of habeas." It is the nature of these particular allegations that would imply the invalidity of his conviction, and, accordingly, Via cannot recover damages under § 1983 without first successfully challenging the deprivation of his good-time credits in a habeas proceeding. The court therefore grants summary judgment in favor of the defendants on Via's procedural due process claim.

### III. RLUIPA, First Amendment, and Equal Protection Claims

#### A. RLUIPA Claim

Via next claims that the defendants' substitution of soy protein for *halal* meat violates RLUIPA. Because the defendants have chosen the least restrictive means to further a compelling government interest, the court grants the defendants' motion for summary judgment on Via's RLUIPA claim.[5]

---

[5] The Common Fare diet is designed to prevent violations of a broad range of religious dietary strictures. Accordingly, all subscribers to the Common Fare diet—regardless of religion—are prohibited from purchasing certain items from the prison commissary without forfeiting their enrollment in the Common Fare diet. Via complains that, because the combination of meat and dairy violates kosher dietary restrictions, he is not allowed to purchase "beef-and-cheese snacks" from the commissary. Via claims that this policy violates RLUIPA, the First Amendment, and the Equal Protection Clause.
  This claim is distinguishable from Via's *halal*-meat claim and is wholly frivolous. Unlike *halal* meat, Via does not claim that beef-and-cheese snacks are part of his religious practice, only that he should be allowed to eat them because doing so does *not* violate his religious beliefs. On this ground there can be no violation of RLUIPA, the First Amendment, or the Equal Protection Clause—prisons have long been allowed to prescribe inmate diets, so long as those prescriptions do not violate statutory or constitutional law. This claim is therefore entirely without merit and will be addressed no further in this opinion.

RLUIPA provides that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). RLUIPA "incorporates" the First Amendment's Free Exercise Clause in that it includes the substantial burden test used in those constitutional inquiries and "expressly refers to the Free Exercise Clause in allocating its burden of proof." Lovelace v. Lee, 472 F.3d 174, 198–99 & n.8 (4th Cir. 2006). The plaintiff bears the initial burden of showing that he seeks to engage in an exercise of religion and that the challenged practice substantially burdens that exercise. § 2000cc-2(b); Lovelace, 472 F.3d at 185–87. Once the plaintiff has established a prima facie case, the defendants bear the burden of persuasion on whether the challenged practice is the least restrictive means of furthering a compelling governmental interest. Id. at 186. For the purposes of RLUIPA, a substantial burden on religious exercise occurs when a state or local government "puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." Id. at 187 (quoting Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 718 (1981)). In examining this question, a court must not attempt to judge the significance of the behavior or belief to the prisoner's religion. Id. at 187 n.2 (quoting Cutter v. Wilkinson, 544 U.S. 709, 723 (2005)). In fact, "the religious practice does not have to be mandated by the religion in order for the burden to be found 'substantial,' as the text of the RLUIPA makes clear." Parks-El v. Fleming, 212 Fed. App'x 245, 247 (4th Cir. 2007) (citing § 2000cc-5 (7)(A)).

9

Via claims that his dietary laws require him to "eat *halal* meat daily." RLUIPA, however, makes it clear that a particular religious practice need not be mandated by a religion in order for the court to find that a prison policy substantially burdens religious practice. Id. at 247. The court therefore assumes without deciding that the defendants have substantially burdened Via's religious practice. But see Malik v. Sabree, C.A. No. 8:06-319-RBH, 2007 WL 781640, at *4 (D.S.C. Mar. 13, 2007) (holding that a prisoner's religious practice was not substantially burdened by a lack of *halal* meat). Assuming, then, that Via's religious practice has been substantially burdened, the defendants must show that the policy in question is the least restrictive means of furthering a compelling government interest. They have shown as much.

VDOC spends $1.90 per day to feed an inmate. (Defs.' Br. Supp. Mot. Summ. J. Attach. 2, ¶ 6, ECF No. 25.) Providing the Common Fare diet increases the cost per inmate by fifty percent, to $2.85. (See id. ¶ 5.) When *halal* meat is included in the diet, as it was until December 2007, the cost more than triples, to an average of $6.00 per day. (See id. ¶ 5.) VDOC's approach to managing the cost of the prison food supply has been to spend less on the most expensive foods while still honoring nutritional and religious requirements. By substituting a protein that is inoffensive to a broad range of religions, VDOC is able to keep food costs at a sustainable level.

Via offers no alternatives to this approach, either in his complaint or in his response to the defendant's motion for summary judgment. He claims only that "no appellate court has ever found [that the government's interest in the orderly administration of its prison dietary system is a] compelling interest.'" (Compl. cl. 2, 7.) (quoting Koger v. Bryan, 523 F.3d 789, 800 (7th Cir. 2008)). The interest here, however, is not the administration of a dietary program, it is the management of cost. Numerous courts have recognized prison cost-control as a compelling

10

interest. See, e.g., Smith v. Ozmint, 578 F.3d 246, 252 (4th Cir. 2009) ("To meet its burden to show a compelling interest, the [prison system's] 'first job' is 'to take the unremarkable step of providing an explanation for the policy's restrictions that takes into account any institutional need . . . to control costs.'") (quoting Lovelace, 472 F.3d at 190); Lovelace, 472 F.3d at 190 (noting that the prison must provide "an explanation for the policy's restrictions that takes into account any institutional need to maintain good order, security, and discipline or to control costs" and that the "explanation, when it comes, will be afforded due deference"); Baranowski v. Hart, 486 F.3d 112, 125 (5th Cir.2007) (stating that a prison policy related to controlling prison costs involves a compelling governmental interest); Muhammad v. Sapp, 388 Fed. App'x 892, 896 (11th Cir. 2010) ("The [prison system] submitted affidavits establishing that its policy of providing alternative entree meals and vegan meals was the least restrictive means of furthering its compelling governmental interest in cost containment."). Moreover, this court is required to give deference to the explanations propounded by the defendants. See Lovelace, 472 F.3d at 182 ("We confirm emphatically that any substantive explanation offered by the prison *must be* viewed with due deference.").[6]

Accordingly, the court finds that the defendants have demonstrated that the substitution of soy protein for *halal* meat is the least restrictive means of furthering the compelling government interest of controlling prison costs. The court therefore grants the defendants' motion for summary judgment on Via's RLUIPA claim.

---

[6] Via also claims that the defendants are in violation of a court order by Judge Jackson Kiser, U.S. District Judge for the Western District of Virginia. The order, issued in 1991, commands VDOC to make various changes to its menu to accommodate members of the Islamic faith. The order is largely concerned with removing pork products from the diet of Islamic adherents. It also lists a range of foods that are inoffensive to the Islamic faith. Nowhere in the order does Judge Kiser mandate or even mention *halal* meat.

11

B. First Amendment Claim

Via next claims that the substitution of soy protein for *halal* meat violates his First Amendment right to the free exercise of religion. By much the same reasoning as above, the court grants the defendants' motion for summary judgment on Via's First Amendment claim.

While it is true that RLUIPA mandates a "'more searching standard' of review of free exercise burdens than the standard used in parallel constitutional claims," id. at 186, "[under both standards] a prisoner has a 'clearly established . . . right to a diet consistent with his . . . religious scruples,'" id. at 198–99 (ellipses in original) (quoting Ford v. McGinnis, 352 F.3d 582, 597 (2nd Cir. 2003)). The First Amendment, like RLUIPA requires a showing of substantial burden, but, unlike RLUIPA, allows that a prisoner's free-exercise rights may be restricted to the extent that prison policy is "reasonably adapted to achieving a legitimate penological objective." Id. at 200 (quoting Young v. Coughlin, 866 F.2d 567, 570 (2nd Cir. 1989)). Thus, the First Amendment affords less protection to an inmate's free-exercise rights than does RLUIPA because the First Amendment adopts a less stringent standard of review than that used in RLUIPA claims: reasonableness instead of strict scrutiny. Id. (quoting Madison v. Riter, 355 F.3d 310, 314–15 n.1 (4th Cir. 2003)).

Neither Via's complaint nor his response in opposition to the defendants' motion for summary judgment offers a shred of evidence or argument that the First Amendment standard has been violated. In fact, Via merely *mentions* a First Amendment violation while framing his complaint almost entirely in terms of RLUIPA. Moreover, and just as in his deficient RLUIPA claim, he has failed to offer anything in opposition to the defendants' affidavits regarding the need for Muslims to eat *halal* meat or the cost to supply *halal* meat as part of the Common Fare diet. Even if the court assumes that the defendants have imposed a substantial burden on Via's

religious practice, the defendants have effectively demonstrated that they have chosen a reasonable means of furthering a legitimate penological objective. Accordingly, the court grants the defendants' motion for summary judgment on Via's First Amendment claim.

### C. Equal Protection Claim

Finally, Via claims that the substitution of soy protein for *halal* meat violates the Fourteenth Amendment right to equal protection of the law. This claim also fails. Because Via has not shown that he is being treated differently than a similarly situated inmate or that any discrimination was purposeful, the court grants the defendants' motion for summary judgment on Via's equal protection claim.

In order to state a claim for a violation of the Equal Protection Clause, a plaintiff must demonstrate that he has been treated differently from other similarly situated parties and that the disparate treatment was a product of purposeful discrimination. Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001) (citing City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 440 (1985)). Only once this showing is made should a court proceed to determine whether the disparate treatment can be justified under the requisite level of scrutiny. Id. Further, Federal Rule of Civil Procedure 56(c) mandates entry of summary judgment against a party who "upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322 (1986); see also Williams v. Hansen 326 F.3d 569, 584 (4th Cir. 2003) ("Though a valid claim for a violation of equal protection need not allege discrimination as the defendant's *sole* motive, it must allege the requisite discriminatory intent with more than mere conclusory assertions.").

Via has completely failed to show either that he is being treated differently from other similarly situated inmates or that any discrimination was purposeful. Accordingly, his equal protection claim cannot survive the defendants' motion for summary judgment.

### IV. Conclusion

For the foregoing reasons, the court grants the defendants' motion for summary judgment.

**ENTER**: This 9th day of November, 2011.

_____
UNITED STATES DISTRICT JUDGE